IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 8, 2008

**JULIUS JONES v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-12258     W. Otis Higgs, Jr., Judge**

_____

**No. W2007-00680-CCA-R3-PC  - Filed April 25, 2008**

_____

The petitioner, Julius Jones, was convicted in 2002 of facilitation of felony murder, a Class B felony, and sentenced to twenty-three years in the Department of Correction.  Following an unsuccessful direct appeal to this court, he filed a petition for post-conviction relief alleging that Tennessee's 1989 Criminal Sentencing Reform Act was unconstitutional and that his appellate counsel rendered ineffective assistance in violation of his federal and state constitutional rights.  The post-conviction court denied the petition, holding that the petitioner failed to prove his factual allegations by clear and convincing evidence.  After our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. McLIN, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Julius Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; James E. Gaylord, Assistant Attorney General; William L. Gibbons, District Attorney General; and Anita Spinetta, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTS

The facts of this matter were set out in the petitioner's direct appeal from his conviction:

On November 28, 1998, Nathenia Dozier arrived home and discovered that someone had broken into her apartment. Upon entering the apartment, she noticed that the phone lines had been cut. The phones were missing, along with two hundred dollars and a leather jacket. She went to a downstairs apartment and paged an

acquaintance, Norman Dixon, and requested that he come to the apartment. Dixon arrived at the apartment in a car being driven by the [petitioner]. The three of them left together and went to the [petitioner's] house.

Shortly after arriving at the [petitioner's] house, the [petitioner] and Dixon left without Dozier and were gone for approximately an hour and a half. When the men returned, they spoke with Dozier, and the [petitioner] told her that as a result of an "investigation" conducted by him and Dixon, they had determined that Maurice Payton and another man had broken into her apartment. Dozier asked the [petitioner] and Dixon if they would accompany her back to her apartment to get a change of clothes so that she could spend the night at the [petitioner's] house. The [petitioner] drove her and Dixon back to Dozier's apartment. After she retrieved clothes from the apartment, the [petitioner] drove the three of them out of the parking lot.

Moments after leaving the parking lot of the apartment complex, Dixon spotted the victim, Maurice Payton, standing near the road. As the [petitioner] pulled alongside the victim, Dixon asked the victim to get into the car, and the victim complied. After a few minutes of conversation, Dixon brandished a gun and asked the victim about breaking into the apartment. The victim told "him everything he wanted to hear." The victim cried and begged as the [petitioner] stopped the car. Dozier exited the car, and the [petitioner] "came after" Dozier. Around that time, Dozier heard a gunshot and realized that Dixon had shot the victim. The [petitioner] asked Dixon why he had not allowed the [petitioner] to be the first one to use his own gun. Thereafter, the [petitioner] and Dixon pulled the victim out of the car and dumped his body beside the road. The victim died of the gunshot wound to his head. The [petitioner] drove Dixon and Dozier back to his house where the [petitioner] and Dixon attempted to clean out evidence of the shooting from the backseat of the car.

State v. Julius L. Jones, No. W2002-02336-CCA-R3-CD, 2003 WL 23100729, at *1 (Tenn. Crim. App. Dec. 30, 2003), perm. to appeal denied (Tenn. June 1, 2004).

After this court upheld his conviction, the petitioner sought post-conviction relief, arguing that his appellate counsel rendered ineffective assistance by not challenging the sufficiency of the evidence supporting the petitioner's conviction.

The petitioner's appellate counsel was the sole witness at the evidentiary hearing. She testified that she challenged the admission of a statement made by Dozier regarding the petitioner's knowledge about the burglary and the trial court's ruling that Dozier could not be questioned about a prior, purportedly inconsistent statement. She said that in preparing the petitioner's appellate brief she reviewed the entire trial transcript, the motion for new trial and the order denying it, and the transcript of the sentencing hearing. On cross-examination, she testified that her decision not to attack the sufficiency of the evidence supporting the petitioner's conviction was based upon trial

-2-

counsel's decision not to raise this issue in the motion for new trial and her independent reading of the trial transcript.

The post-conviction court denied the petition, holding:

In this case, appellate counsel testified that she made the strategic decision not to raise sufficiency of the evidence after reading the entire trial transcript and based on the fact that the trial attorney did not raise that issue in his new trial motion. [footnote omitted] After examining the State's [sic] proof, this court concludes that Petitioner's claim fails both prongs of the <u>Strickland</u> test. At trial, the State provided evidence that Petitioner was disappointed that he had not been able to use his own gun to kill the victim, that Petitioner had assisted in disposing of the body, and that Petitioner helped to dispose of the evidence. . . . It is entirely reasonable that appellate counsel would take this evidence into consideration and make the decision that it would be frivolous to raise insufficiency of the evidence on appeal.

Assuming arguendo that this decision did constitute gross professional negligence, Petitioner has nevertheless failed to show clear and convincing evidence that the decision resulted in prejudice against him because the evidence was sufficient to support a finding that Petitioner was operating with the *mens rea* required for kidnapping and felony murder. Under Tennessee law, kidnapping requires there to be a false imprisonment, which results when there is a knowingly unlawful confinement. . . . Additionally, Tennessee's felony murder law lists kidnapping as an underlying offense supporting a felony murder conviction. . . . The statute also reads that "[n]o culpable mental state is required for [a felony murder] conviction except the intent to commit the enumerated offenses or acts." . . . The evidence presented at trial was sufficient to support a finding that Petitioner knowingly kidnapped the victim, thus the murder resulting therefrom could lead to a conviction of felony murder. Because there is not a reasonable probability that Petitioner would have prevailed if sufficiency of the evidence had been raised on appeal, his claim of ineffective assistance of counsel is without merit.

## ANALYSIS

On appeal, the petitioner asserts that appellate counsel was ineffective, arguing that the evidence was insufficient either to support a finding that a kidnapping took place or that he facilitated a murder in perpetration of a felony.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings

of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See Wiley, 183 S.W.3d at 325; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the <u>Strickland</u> Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; <u>see also</u> <u>Overton v. State</u>, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, <u>see</u> <u>Strickland</u>, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. <u>See</u> <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. <u>See</u> <u>Thompson v. State</u>, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. <u>See</u> <u>Denton v. State</u>, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in <u>Burns</u>, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

In order to determine whether the petitioner received ineffective assistance of counsel, we must analyze whether the evidence was sufficient to support the petitioner's conviction. First degree murder is, *inter alia*, a killing of another committed in the perpetration of or attempt to perpetrate certain enumerated felonies, including kidnapping. No culpable mental state is required for a murder in perpetration of a felony, except the intent to commit the underlying felony. Tenn. Code Ann. § 39-13-202(a)-(b). As relevant here, kidnapping is the knowing, unlawful removal or confinement of another so as to substantially interfere with the other's liberty, under circumstances exposing the other to substantial risk of bodily injury. <u>Id.</u> § 39-13-303(a)(1). "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [Tennessee Code Annotated] § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." <u>Id.</u> § 39-11-403(a).

Following our review, we conclude that the record supports the determinations of the post-conviction court. At trial, Nathenia Dozier testified that, following the discovery of her apartment's burglary, the petitioner and Norman Dixon conducted an "investigation" and determined that the victim and another person were responsible. The petitioner and Dixon took Dozier to retrieve some clothes from her apartment. As they were leaving the apartment complex, they spotted the victim, and Dixon asked him to enter their car. As the petitioner drove, Dixon turned a gun on the victim and began questioning him about the burglary. The petitioner stopped the vehicle and exited along with Dozier. Dixon shot the victim, and the petitioner helped him remove the victim's body from the vehicle.

From the foregoing evidence, a rational jury could have found the petitioner guilty of facilitation of felony murder. Therefore, the petitioner has not established that appellate counsel was ineffective in not challenging the sufficiency of the evidence and is not entitled to relief.

## <u>CONCLUSION</u>

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE